Williams, J.
No complaint is made with respect to the regularity of the proceedings for the improvement, or the validity of the assessments to the extent of twenty-five per cent, of the value of the plaintiffs’ lots after the improvement was made. The assessment on some of the lots exceeded their entire value, as found by the court, and on all the others is largely in excess of twenty-five per cent, of their value. An amount equal to twenty-five per cent, of the value of each lot was tendered by the plaintiffs to the city, and refused by it, before the commencement of the suit, which was brought to enjoin the assessments in so far as they are in excess of that amount. The assessments on the plaintiffs’ lots, to the extent of their full value, were sustained by the court below, on the ground that the owners had filed with the appropriate municipal board a petition requesting the improvement to be made. It appears from the record that a petition for the improvement, signed by the plaintiffs and others who were the owners, in the aggregate, of about one-fourth in interest of the property abutting on that part of the street sought to be improved, was presented to the proper municipal *118 board of the city of Cincinnati on the 26th day of May, 1892, and then referred by the board to its engineer for verification of the signatures, and for report upon the abutting frontage of the property owned by the subscribers. On the 2nd day of June, 1892, the engineer made his report showing that the total frontage of the property abutting on the proposed improvement was 2835 feet, of which the petitioners were the owners of but 738 feet, being less than one-third of the whole number of feet front. No additional signatures were obtained to that petition, nor was any other petition for the improvement filed or presented to the municipal authorities. After the report of the engineer, no step was taken toward the improvement of Goodwin street until July 6, 1894, when a resolution was adopted declaring it necessary to improve that street between certain designated points, by grading, etc. Notice of this resolution was duly given, and on the 2nd day of November, 1894, an ordinance was passed to improve the street and assess the expenses upon the abutting property, according to the foot front. Under this ordinance the improvement was made, and to pay the cost thereof the assessment in question was levied. At the time the petition referred to was presented and the report of the engineer thereon was made, the statute (Section 2271) provided that: “In cities of the first grade of the first class, the tax or assessment specially levied or assessed upon any lot or land for any improvement, shall not, except as provided for in section 2272, exceed twenty-five per centum of the value of such lot or land after the improvement is made, and the cost exceeding that per centum shall be paid by the corporation out of its general revenue.” The exception, then contained in section 2272, to the limitation thus imposed on the amount of assessments, was that: “When a petition,' subscribed by three-fourths in interest of the owners of property abutting *119 upon any street or highway, of any description, is regularly presented to the council for the purpose, the cost of any improvement of such street or highway may he assessed and collected in equal annual installments, proportioned to the whole assessment, in a manner to be indicated in the petition, or if not so indicated, then in the manner which may be fixed by council; but when the lot or land of one who did not subscribe the petition is assessed, such assessment shall not exceed twenty-five per centum of the value of his lot or land after the improvement is made.” This section was amended by the act of May 21, 1894 (91 O. L., 428), by substituting the words “any owner or owners,” for “three-fourths in interest of the owners,” and the “board of administration,” for the “council.” So that, the petition for the improvement, when presented and reported upon by the engineer, not being signed by the requisite number in interest of the abutting owners, neither removed nor waived the limitation of section 2271, on the amount that might lawfully be assessed on the plaintiffs’ lots. But, if the petition is to be treated as one under the amendment of May 21, 1894, it authorized the assessment as sustained by the court below. The precise question, therefore, is not whether the assessment for an improvement should be made in conformity Avith the law in force Avhen the ordinance for the improvement was adopted, but rather, are the plaintiffs to be regarded as petitioners for the improvement under the amendatory act of 1894. If they are not, an assessment upon their lots in excess of the limitation prescribed by section 2271, is not in conformity with the law in force when the improvement ordinance was passed.-
It is not claimed that any petition for the improvement of Goodwin street was presented by the plaintiffs after the statute was amended in 1894. But it is sought to hold them as petitioners *120 thereunder upon the ground that the petition previously presented constituted a continuing offer to submit to an unlimited assessment, which became binding by its accordance resulting from the adoption of the resolution and ordinance under which the improvement was made. We are unable to concur in the view, either that the petition, after the engineer reported it was insufficient to affect the general limitation upon assessments, continued to be such a request for the improvement after the statute was amended, or, if so, that there was an acceptance of it by the defendant. More than two years elapsed after that report was made, before the resolution for the improvement of the street was adopted. It does not appear that in adopting the resolution, or the passage of the improvement ordinance, the board of legislation acted upon, or was influenciad by the petition, or had any knowledge of its existence; and, so far as the record shows, nothing more was heard of the petition from the time the engineer reported it insufficient, until the assessment was made in 1895. But if it be conceded that by reson of the failure to withdraw the petition it should be treated as an offer continuing indefinitely, the acceptance of which at any time would become the equivalent of a contract or consent by which the plaintiffs would be bound, the question remains, what were the terms and conditions of the offer when made? It is well settled that a proposal by one person to another imposes no obligation upon the former until it is accepted by the latter according to the terms in which the offer is made; and any qualification of, or departure from those terms invalidates the offer, unless the same be otherwise agreed to fly the person who made it. Both parties must assent to the same -thing in the same sense. What, then, were the nature and effect of the proposal made by the plaintiffs by the presentation of their petition for the improvement? There is nothing *121 to show that it contained any special terms or stipulations. The finding of the court is simply that the plaintiffs presented a petition for the improvement. In determining the effect of such a petition reference must he had to the law in force, and the situation of the parties, at the time of its presentation. As the law then stood, unless the owners of three-fourths in interest ©f the property abutting on the proposed improvement should unite in the petition, it did not dispense with the requirement that the assessments on their lots for the cost of the improvement should be limited to twenty-five per cent, of their value, nor have any other effect whatever; and, it was therefore necessarily implied in the proposal, as a condition of the waiver of that limitation, that the necessary three-fourths in interest, of the owners, should become petitioners, either by subscribing that petition, or presenting another of like import. The plaintiffs manifested their willingness, and proposed, to bear their pro rata share of the cost of the improvement requested, properly apportioned among all of the required number of lot owners when they should agree thereto, though the assessment upon each lot should exceed the twenty-five per cent, limitation, but they did not propose to assume any greater burden. In this sense the petition was understood and acted upon by the municipal authorities, for, when it was ascertained from the report of the engineer that the required number of lot owners had not become petitioners, no further step was taken under it. The petition could mean nothing else, for under the statute it could have no other effect. In that sense the petition was never accepted, nor was the condition upon which ft could have become of any binding force complied with. A subsequent change in the law did not change the character or conditions of the offer. Being, when made, a proposal of the nature and effect stated, if it could be held to have continued as an offer after the report of the engineer *122 showing its insufficiency, it must be considered as continuing only according to its terms and conditions when made. It did not become a new offer on different terms by the failure to withdraw the petition from the files after notice of the adoption of a resolution to improve the street. Such a notice is required to be given all land owners affected, in all cases of street improvements, and that given the plaintiffs in no way apprised them that their petition presented and found insufficient more than two years before, was to be accepted or relied on by the municipal authorities, as a petition under the amendatory statute. And, acquiescence in the improvement falls short of assent by the plaintiffs to an unlimited assessment on their property therefor.
We do not question the rule laid down in Campbell v. Park, 32 Ohio St., 544, that it is not necessary all petitioners for an improvement should sign the same petition, but if several petitions are signed by different competent petitioners aggregating the required number to give jurisdiction, the order for the improvement may lawfully be made. The rule, has no application to this case. There the required number of land owners were petitioners, and the proceeding under the petitions was continuously prosecuted. Nor, do we question the doctrine of Cincinnati v. Seasongood, 46 Ohio St., 296, and Shehan v. Cincinnati, 25 W. L. B., 212, that the law in force when the improvement ordinance is passed furnishes the rule of assessment. It must be borne in mind that section 2271, was in force Avhen the improvement ordinance in this case was passed, as well as the amendment of 1894 to section 2272. The former furnishes the general rule for all assessments, for every improvement, and that rule must be uniformly applied, and the assessment accordingly limited, unless a case is plainly made for the application of the exception contained in the latter section, which can only be done by proper petition thereunder. And since, as *123 has been seen, the record does not bring the plaintiffs within that exception, the assessments against their property must be limited according to the general rule, and the excess over that amount is illegal.
The judgment below will be reversed, and judgment rendered enjoining the collection of the assessments against the plaintiffs’ lots, in excess of twenty-five per cent, of their value as found by the court below.

Judgment accordingly.